UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NCR VOYIX CORPORATION,<br><br>        Plaintiff,<br><br>v.<br><br>FEDEX SUPPLYCHAIN SYSTEMS INC.,<br><br>        Defendant. | Civil Action No.:1:26-cv-5868 |

**COMPLAINT**

Plaintiff NCR Voyix Corporation ("NCRV" or "Plaintiff"), by and through its undersigned counsel, brings this Complaint against Defendant FedEx SupplyChain Systems, Inc. ("FedEx" or "Defendant"), and alleges as follows:

### I.        THE PARTIES

1.        Plaintiff NCR Voyix f/k/a NCR Corporation is a Maryland corporation with its principal place of business at 864 Spring Street NW, Atlanta, Georgia 30308. NCRV is a technology company that provides software, point-of-sale devices, self-checkout machines, and other operational support systems, and at all relevant times had a need for warehousing.

2.        Defendant FedEx SupplyChain Systems, Inc. is an Ohio corporation with its principal place of business at 5025 Tuggle Road, Memphis, Tennessee 38118. FedEx provides supply chain solutions to businesses, including warehousing services.  FedEx can be served with process by serving its registered agent for service of process, CT Corporation System, at 4400 Easton Commons Way, Suite 125, Columbus, Ohio 43129, or 28 Liberty St., New York, New York, 10005, or wherever it may be found.

### II.        NATURE OF THE ACTION

1

3.    On or about April 7, 2015, NCRV and FedEx executed a Master Logistics Services Agreement (the "MLSA"), under which FedEx agreed to provide warehouse services to NCRV in exchange for payment, subject to the MLSA's additional terms and conditions.

4.    On or about April 7, 2015, NCRV and FedEx executed the A-1 Statement of Work.

5.    On or about September 8, 2016, NCRV and FedEx executed a B-1 Statement of Work.

6.    The MLSA, A-1 Statement of Work, and  B-1 Statement of Work are, together, referred to as the "Contract."

7.    FedEx has not satisfied its obligations under the Contract.  As a result, NCRV has suffered, without limitation, economic and reputational damages.

8.     Pursuant to the Contract, NCRV—a manufacturer and distributor of technology systems—stored its property in FedEx warehouses, including specialized warehouses known as Forward Stocking Locations ("FSLs").  FSLs are FedEx-managed inventory locations used to store and stage parts or products closer to end users for expedited fulfillment.

9.    NCRV paid FedEx FSL Minimum Charges in exchange for warehousing services at the FedEx FSLs.  The FSL Minimum Charges were baseline charges FedEx assessed for NCRV's use of the FSLs, regardless of whether NCRV's actual transaction volume reached the contractual minimum in the Contract during the applicable billing period.

10.    In February 2021, FedEx began missing its Key Performance Indicators (KPIs) as established in the Contract. KPIs refer to, among other things, timeliness of handling and processing NCRV's inventory. FedEx agreed to perform these tasks subject to certain performance criteria but in many months failed to do so. NCRV promptly raised the issue of missed KPIs with

FedEx as they occurred. However, FedEx continuously failed to perform its obligations under the Contract.

11.    For several years of the term of the Contract, FedEx failed to meet reporting and performance standards under the KPI table and Section 10(f) of the A-1 Statement of Work.

12.    Upon missing KPIs, FedEx was required to tender performance penalties or credits to NCRV as outlined in the Contract.

13.    FedEx has not issued all performance penalties and credits to NCRV as required by the Contract.  FedEx's failure to issue all performance penalties and credits for its KPI violations constitutes a breach for which NCRV is entitled to $3,015,000.00 in performance penalties and credits.

14.    FedEx's performance issues were not limited to missing KPIs. FedEx also lost NCRV's inventory worth a total of $5,090,690.89. This total has two components: (a) between April 1, 2021 and March 31, 2024, FedEx lost $1,035,194 of NCRV's inventory, above the shrinkage amounts allowed under the Contract, and (b) from April 1, 2021 to December 31, 2023, FedEx failed to timely transact and locate $4,055,496.89 of NCRV's inventory.

15.    Section 11.2.1 of the MLSA of the Contract purports to limit FedEx's exposure to damages related to misplaced or lost inventory to $1,500,000.00. As of the filing of this Complaint, FedEx has still not paid NCRV for the loss of inventory and is therefore liable to NCRV for at least this amount. Importantly, however, to the extent this contractual limitation on damages in the Contract does not apply due to FedEx's liability under the alternative U.C.C. bailment claim stated herein, NCRV seeks the full value of the lost inventory, totaling $5,090,690.89.

16. Because FedEx imposed improper restrictions on NCRV, which limited the number of transactions at FSL warehouses, the $403,448.00 in FSL Minimum Charges assessed during the transition period are invalid and FedEx must refund them.

17. FedEx also invalidly charged NCRV $756,416.00 in "improper receiving minimums" and "order minimum" fees, also known as DC Minimum Fees. DC Minimum Fees are baseline charges for NCRV's access to and use of FedEx distribution centers, regardless of whether NCRV's actual distribution-center activity reached a particular transaction or volume threshold during the applicable billing period. These charges were improper because both parties agreed that minimum fees should not be charged when FedEx was not meeting its contractual obligations. Moreover, FedEx invalidly applied an additional $1,327,470.00 in DC Minimum Fees to NCRV's account balance.

18. Accordingly, NCRV seeks: (a) to the extent Section 11.2.1 of the MLSA of the Contract applies to limit NCRV's inventory-loss recovery, $1,500,000.00 for inventory losses spanning three contract years; (b) $3,015,000.00 for FedEx's failure to meet KPIs and reporting breaches; (c) $403,448.00 as a refund for invalid FSL Minimum Charges; (d) removal of $1,327,470.00 in invalidly invoiced DC Minimum Fees from NCRV's account balance; (e) $756,416.00 as a refund for erroneously paid DC Minimum Fees; (f) in the alternative to the relief sought in subparagraph (a), $5,090,690.89 as the value of NCRV's missing, unusable, and unaccounted-for inventory, including lost inventory and inventory FedEx failed to timely transact, locate, or account for;  as well as (g) pre- and post-judgment interest.

### III.   JURISDICTION AND VENUE

19. This Court possesses subject matter jurisdiction under 28 U.S.C. § 1332(a) because there is complete diversity between the parties and the amount in controversy exceeds $75,000.00,

exclusive of interest and costs. NCRV is incorporated in Maryland and has its principal place of business in Atlanta, Georgia, whereas FedEx is incorporated in Ohio and has its principal place of business in Memphis, Tennessee.

20.     The Court possesses personal jurisdiction over FedEx because under Section 22.5 of the MLSA of the Contract, NCRV and FedEx agreed that all disputes "shall be exclusively brought and maintained in the state or federal courts located in the State of New York and New York County in the United States."  Accordingly, FedEx has consented to this Court's personal jurisdiction over it. This Court is likewise the proper venue for this action under Section 22.5 of the MLSA of the Contract.  Finally, Section 22.5 of the MLSA of the Contract also provides that "New York law governs this Agreement, all Services occurring under it, and the relationship created by it, without reference to principles of conflicts of law that would result in the application of any other State's laws." This Court is therefore the proper venue for this action pursuant to N.Y. Gen. Oblig. Law §§ 5-1401-1402.

### IV.     FACTS COMMON TO ALL CLAIMS FOR RELIEF

**A.     Preliminary Matter: NCR Voyix's Standing to Assert Claims**

21.     "NCR Corporation" is the named party that agreed and accepted the Contract along with FedEx in April 2015. On October 16, 2023, NCR Corporation changed its name to NCR Voyix Corporation. NCRV is the party of record to enforce the Contract. FedEx was aware of this name change as it continued to interact with, take direction from, and accept payments from NCRV.

**B.     The Contract**

22.    The Contract between NCRV and FedEx sets forth the terms governing the parties' relationship with respect to Third-Party Logistics services FedEx provided for NCRV. The Contract reflects the parties' agreed-upon obligations, rights, and responsibilities.

23.    NCRV was in frequent communication with FedEx in regard to the relationship governed by the Contract in which NCRV often notified FedEx about missing inventory, delinquent investigations, and missed KPIs.

## C.    Pertinent Terms of the Contract

24.    Section 2 of the MLSA of the Contract addresses the scope of the parties' agreement. Section 2.2 governs the relationship between the Contract and any Statements of Work ("SOW"), providing that an "SOW may contain additional terms and conditions, or reference exhibits, schedules, or attachments, applicable to that SOW," and that an SOW is binding when executed by the parties' authorized representatives.

25.    Section 11 of the MLSA of the Contract, titled "Standard of Care, Limitation on Inventory Damage," governs FedEx's standard of care and liability for lost or damaged inventory.

26.    In relevant part, Section 11.1 provides that FedEx "shall be liable for any loss or damage to Inventory while in its care, custody or control," except for certain excluded events and subject to the liability limits in Sections 11.2, 11.3, and 11.4.

27.    Section 11.1 further provides that "[r]isk of loss shall transfer to [FedEx] when [FedEx] accepts inventory at its facility pursuant to the applicable SOW."

28.    If applicable, Section 11.2.1 limits FedEx's liability for lost or damaged inventory in its care, custody, or control as contractual damages. It provides that, where shrinkage exceeds the threshold in Section 11.4, NCRV's remedy is limited to the lesser of $25,000.00 per unit, based on NCRV's replacement cost, up to an annual maximum of $500,000.00.

6

**D.    FedEx's Breach of Section 11**

29.    During the course of the Contract, NCRV and FedEx regularly communicated regarding lost inventory. NCRV documented more than $5,090,690.89 in losses due to FedEx's mismanagement of NCRV's inventory between April 1, 2021 and March 31, 2024, spanning three contract years. If Section 11.2.1 of the MLSA of the Contract is deemed to be applicable, FedEx's liability is capped at $500,000.00 per year, and NCRV's claim is limited to $1,500,000.00.

30.    NCRV had ongoing communication with FedEx about the warehouse's mismanagement of inventory amongst other things.  In emails dated December 31, 2023 and January 4, 2024, Michael Phillips sent data to Brent Mohair and Patrick Maier of FedEx discussing then-current analysis of inventory discrepancies.

31.    Of the $5,090,690.89 in documented losses, $1,035,194.05 represents lost inventory due to inventory shrinkage as of the termination of the Contract.  The remaining $4,055,496.89 represents inventory that FedEx failed to properly transmit, locate, or account for, rendering the inventory unusable and requiring NCRV to procure replacements.

32.    Mr. Phillips's January 4, 2024 correspondence set forth the basis for, and provided supporting documentation regarding, the $4,055,496.89 in inventory that FedEx failed to timely transact and locate.

33.    "POD" inventory, meaning inventory for which NCRV provided proof of delivery to FedEx but FedEx did not acknowledge receipt into inventory in its distribution center, accounts for $1,793,926.84 of that amount.

34.    The remaining $2,261,570.05 in inventory was "VMQ," meaning inventory for which FedEx performed a check but could not locate, requiring further investigation by FedEx.

35.     Accordingly, FedEx was aware of NCRV's lost inventory claims but has failed to pay NCRV the $1,500,000.00 in damages to which it is entitled per Section 11.2.1 of the MLSA of the Contract.

36.     In the alternative, FedEx must pay the entire amount of the lost bailed inventory which is $5,090,690.89, consisting of $1,035,194.05 in inventory shrinkage, $1,793,926.84 in POD inventory for which NCRV provided proof of delivery but FedEx did not acknowledge receipt, and $2,261,570.05 in "VMQ" inventory which FedEx could not locate.

**E.     FedEx's Breach of A-1 SOW Sections 9 & 10**

37.     In February 2021, FedEx began missing KPIs. A KPI is a measurable performance standard used to evaluate whether FedEx was meeting its contractual obligations including required inventory-management timeliness and quality benchmarks.

38.     Michael Browne of NCRV immediately raised the issue with FedEx.

39.     FedEx supplied data for the KPIs, so it was aware it was missing KPIs.

40.     On August 17, 2022 FedEx agreed that minimums should not be charged when KPIs were not met.

41.     On August 22, 2022 FedEx sent an e-mail to NCRV confirming that FedEx issued a credit memo of $101,028.60 for DC Minimum Fees billed between April-June 2022, in acknowledgment its obligation to do so.

42.     However, FedEx did not issue performance penalties and credits sufficient to remedy its other repeated KPI failures.

43.     FedEx must pay NCRV $3,015,000.00 for performance penalties and credits as agreed upon in the A-1 SOW Sections 9 & 10 for KPI failures and reporting breaches from January 2021 through August 2023.

**F.    FedEx's Breach of B-1 SOW**

44.    On July 2, 2024, NCRV provided FedEx with the required 180-day notice of intent to terminate the Contract and all amendments and SOWs thereto effective December 29, 2024.

45.    The parties then agreed to an exit plan that included two- to three-week holds at FSLs to permit inventory counts.

46.    During the period of the exit plan, FedEx prohibited NCRV from sending orders into or out of the locations yet continued to charge NCRV FSL Minimum Charges. Because FedEx prevented NCRV from using the locations while imposing those charges, FedEx improperly charged NCRV $403,448.00 in unsupported FSL Minimum Charges.

**G.    FedEx's Breach of A-1 SOW Section 11, Attachment 3; and August 17, 2022, Agreement**

47.    As previously stated, in an August 17, 2022 agreement, FedEx and NCRV agreed that DC Minimum Fees should not be charged when the facility is not meeting the daily KPIs.

48.    FedEx persistently failed to meet daily KPIs from January 2021 through August 2023, at which point FedEx ceased sending data to calculate the KPIs.

49.    FedEx's failure to provide accurate and up-to-date KPI data is in violation of Section 9 of the MLSA of the Contract.  Accordingly, FedEx should not have charged DC Minimum Fees from January 2021 on, but it did so anyway.

50.    FedEx invalidly added $1,327,470.00 to NCRV's account balance in DC Minimum Fees charges for the applicable time period. Further, NCRV erroneously auto-paid $756,416.00 in DC Minimum Fees from January to March 2024, and FedEx has refused to refund that mistaken payment.

**V.    CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**

9

**Breach of Contract - Loss of Inventory**

51.     NCRV repeats and re-alleges each and every allegation set forth in the paragraphs above, and incorporates them herein by reference.

52.     NCRV and FedEx are parties to a valid and enforceable Contract.

53.     NCRV has performed its obligations under the Contract except where excused.

54.     FedEx lost $1,035,194 of NCRV's inventory above permitted shrinkage amounts between April 1, 2021 and March 31, 2024.

55.     Additionally, FedEx failed to timely transact and locate $4,055,496.89 worth of NCRV's inventory.

56.     "POD" inventory—inventory for which NCRV provided proof of delivery to FedEx but FedEx did not receipt into inventory in its distribution center—accounts for $1,793,926.84 of that amount.

57.     The remaining $2,261,570.05 was "VMQ" inventory for which FedEx performed a check but could not locate at all, or could not locate timely rendering the inventory unusable and requiring NCRV to procure replacements.

58.     FedEx failed to pay NCRV for lost inventory.  Under Section 11.2.1 of the MLSA of the Contract, FedEx is liable for up to $500,000.00 per year for inventory loss. NCRV's inventory losses spanned three years, resulting in $1,500,000.00 in damages under Section 11.2.1.

59.     FedEx was provided with notice of this breach and given an opportunity to cure the breach including, without limitation, in letters dated October 2, 2025 and April 20, 2026.

60.     FedEx did not cure its breach of failing to pay NCRV for the loss of inventory.

10

61.     As a direct and proximate result of FedEx's breaches of the Contract, NCRV has been and continues to suffer damages including, without limitation, economic damages and reputational damages.

62.     FedEx is entitled to recover $1,500,000.00 pursuant to Section 11.2.1 of the MLSA of the Contract.

## SECOND CLAIM FOR RELIEF

### Breach of Contract - Failure to Meet Key Performance Indicators

63.     NCRV repeats and re-alleges each and every allegation set forth in the paragraphs above, and incorporates them herein by reference.

64.     NCRV and FedEx are parties to a valid and enforceable Contract.

65.     NCRV performed its obligations under the Contract except where excused.

66.     FedEx failed to meet reporting and performance standards, triggering "Red Threshold" violations under the KPI Table and Section 10(f) of the A-1 SOW from January 1, 2021 to December 31, 2024.

67.     FedEx's failure to issue credits for these violations constitutes a breach for which NCRV is entitled to $3,015,000.00 in performance penalties and credits.

68.     FedEx was provided notice of this breach and given an opportunity to cure the breach in letters dated October 2, 2025 and April 20, 2026.

69.     FedEx did not cure its breach of failing to issue performance penalties or credits for its KPI violations.

70.     NCRV has suffered damages because of FedEx's breach including, without limitation, economic damages.

71.     Accordingly, NCRV is entitled to recover $3,015,000.00 for this breach.

### THIRD CLAIM FOR RELIEF

11

**Breach of Contract - Improper Forward Stocking Location Minimum Charges**

72. NCRV repeats and re-alleges each and every allegation set forth in the paragraphs above, and incorporates them herein by reference.

73. NCRV and FedEx are parties to a valid and enforceable Contract.

74. NCRV performed its obligations under the Contract except where excused.

75. FedEx incorrectly invoiced NCRV for $403,448.00 in FSL Minimum Charges. Although NCRV and FedEx agreed on certain terms to transition NCRV out of FedEx's FSL network, FedEx capped the number of transactions NCRV could perform during the transition period. Because FedEx imposed these increased restrictions on the number of transactions, NCRV is not responsible for the FSL Minimum Charges incurred during that period and the charges should have been discontinued upon NCRV's winding down its use of the FSLs.

76. NCRV provided FedEx with notice of this breach and extended an opportunity to cure the breach including, without limitation, in letters dated October 2, 2025 and April 20, 2026. To the extent NCRV did not provide FedEx with comprehensive notice of its FSL invoicing error, FedEx's own deficiencies in inventory tracking prevented NCRV from knowing it had been improperly invoiced for FSL Minimum Charges.

77. FedEx did not cure its breach of invalid FSL Minimum Charges.

78. NCRV has suffered damages because of FedEx's breach including, without limitation, economic damages.

79. Accordingly, NCRV is entitled to recover $403,448.00 in invalid FSL Minimum Charges.

**FOURTH CLAIM FOR RELIEF**

**Breach of Contract - "Improper Receiving Minimum" and "Order Minimum" Fees ("DC Minimum Fees"):**

12

80. NCRV repeats and re-alleges each and every allegation set forth in the paragraphs above, and incorporates them herein by reference.

81. NCRV and FedEx are parties to a valid and enforceable Contract.

82. NCRV performed its obligations under the Contract except where excused.

83. FedEx and NCRV agreed that NCRV should not be charged DC Minimum Fees when the facility is not meeting its daily KPIs. FedEx persistently failed to meet daily KPIs from January 2021 through August 2023 at which point it stopped providing data to calculate KPIs—in violation of Section 9 of the MLSA of the Contract.

84. FedEx has invalidly charged NCRV $1,327,470.00 in DC Minimum Fees. Additionally, for the months of January to March 2024, NCRV erroneously auto-paid DC Minimum Fees in the amount of $756,416.00, which FedEx has failed to return to NCRV

85. Accordingly, NCRV is entitled to the removal of $1,327,470.00 in invalidly invoiced DC Minimum Fees from their account as well as a refund of $756,416.00 in erroneously paid DC Minimum Fees from January to March 2024.

86. NCRV provided FedEx with notice of this breach and gave FedEx an opportunity to cure the breach in letters dated October 2, 2025 and April 20, 2026.

87. FedEx did not cure its breach of A-1 SOW A-1, Section 11, attachment 3; and August 17, 2022 agreement.

88. NCRV suffered damages because of FedEx's breach including, without limitation, financial harm.

## FIFTH CLAIM FOR RELIEF

**Alternative Cause of Action - Breach of Bailment and Warehouse Duties Under New York U.C.C. Article 7**

89.     NCRV repeats and re-alleges each and every allegation set forth in the paragraphs above, and incorporates them herein by reference.

90.     NCRV pleads this claim in the alternative to its First Cause of Action to the extent FedEx contends that Section 11.2.1 limits NCRV's contractual recovery.

91.     FedEx agreed to provide third-party logistics and warehousing services to NCRV, including receiving, storing, tracking, locating, transacting, safeguarding and returning NCRV's inventory.

92.     NCRV delivered inventory to FedEx for storage, handling, and distribution, and FedEx accepted possession and control of NCRV's inventory pursuant to the Contract and applicable SOWs.

93.     By accepting possession and control of NCRV's inventory for storage, handling, and distribution, FedEx acted as a warehouse, bailee, or other person responsible for goods within the meaning of New York U.C.C. Article 7.

94.     Under New York U.C.C. § 7-204, FedEx was required to exercise the care with regard to NCRV's goods that a reasonably careful person would exercise under similar circumstances.  FedEx failed to do so.

95.     FedEx lost $1,035,194 of NCRV's inventory above permitted shrinkage amounts between April 1, 2021 and March 31, 2024.

96.     Additionally, FedEx failed to timely transact and locate $4,055,496.89 worth of NCRV's inventory.  $1,793,926.84 of this figure is classified as "POD," meaning that while NCRV provided proof of delivery of the inventory to FedEx, FedEx failed to receipt the inventory in its possession.

97. The remaining $2,261,570.05 in inventory was "VMQ," or inventory for which FedEx performed a check but could not locate, requiring further investigation by FedEx.

98. FedEx's failure to exercise reasonable care in receiving, storing, tracking, transacting, safeguarding, and returning NCRV's inventory breached FedEx's bailment and warehouse duties under N.Y. U.C.C. § 7-204(b).

99. As a direct and proximate result of FedEx's breach of its bailment and warehouse duties, NCRV has suffered damages, including economic damages, reputational damages, loss of use of its property, and the cost of procuring replacement inventory.

100. For the foregoing reasons, NCRV is entitled to recover damages for FedEx's breach of bailment and warehouse duties, in the amount of $5,090,690.89, representing the value of the missing, unusable, and unaccounted-for inventory, to the extent not otherwise under the Contract.

## VI. DEMAND FOR JURY

NCRV hereby requests a trial by jury on all claims for which a jury is permitted.

## VII. PRAYER FOR RELIEF

WHEREFORE, NCRV requests that the Court enter judgment against FedEx as follows:

(1) Awarding Principal damages in the amount of $1,500,000.00 for breach of Section 11.2.1 of the MLSA of the Contract to the extent Section 11.2.1 applies to limit NCRV's inventory-loss recovery;

(2) Awarding principal damages in the amount of $3,015,000.00 for breach of the KPI Table and Section 10(f) of the A-1 SOW of the Contract;

(3) Refunding $403,448.00 in invalidly charged FSL Minimum Charges;

(4) Removing $1,327,470.00 in invalidly invoiced DC Minimum Fees from NCRV's account;

(5)     Refunding $756,416.00 in erroneously paid DC Minimum Fees;

(6)     In the alternative to the relief requested in paragraph 1, awarding NCRV damages in the amount of $5,090,690.89 for FedEx's breach of bailment and warehouse duties and failure to return, account for, or pay for NCRV's missing, unusable, and unaccounted-for-inventory;

(7)     Recovery and possession of the lost inventory;

(8)      If recovery and possession cannot be had, the fair market value of the lost inventory;

(9)     Other damages caused by FedEx's wrongful detention of the inventory, including but not limited to loss of use;

(10)    For prejudgment interest and post-judgment to the extent recoverable by law;

(11)    For costs of suit;

(12)    For such other relief this Court deems just and proper.

16

Dated: July 10, 2026

Respectfully submitted,

By:   /s/ *Evan S. Nadel*
      **Evan S. Nadel**
      New York State Bar No. 2910412
      enadel@ktslaw.com

**KILPATRICK TOWNSEND & STOCKTON LLP**
3 Times Square
New York, NY USA 10036
Telephone:    (212) 775-8700
Telecopier:    (212) 775-8800

-and-

      **Craig A. McDougal (Pro Hac Vice to be filed)**
      Texas State Bar No. 13569850
      cmcdougal@ktslaw.com
      **John D. Robinson (Pro Hac Vice to be filed)**
      Texas State Bar No. 24116977
      John.robinson@ktslaw.com

**KILPATRICK TOWNSEND & STOCKTON LLP**
2001 Ross Avenue, Suite 4400
Dallas, Texas 75201
Telephone:    (214) 922-7100
Telecopier:    (214) 922-7101

**ATTORNEYS FOR NCR VOYIX CORPORATION**